## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE MONROY,<br><br>                          Plaintiff,<br><br>        v.<br><br>MAGNACHIP SEMICONDUCTOR CORPORATION, YOUNG-JOON KIM, KYO-HWA CHUNG, MELVIN L. KEATING, ILBOK LEE, CAMILLO MARTINO, GARY TANNER, and NADER TAVAKOLI,<br><br>                          Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

### COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff George Monroy ("Plaintiff"), by his undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.     This is an action brought by Plaintiff against Magnachip Semiconductor Corporation ("Magnachip" or the "Company") and the members of the Company's board of directors (the "Board" or the "Individual Defendants" and, together with Magnachip, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) and Rule 14a-9, 17 C.F.R. § 240.14a-9, and for breaching their fiduciary duty of candor. Plaintiff's claims arise in connection with the proposed merger between Magnachip and South Dearborn Limited ("South Dearborn"), an affiliate of Wise Road Capital LTD ("Wise Road") (the "Proposed Transaction").

2.     On March 25, 2021, Magnachip entered into an Agreement and Plan of Merger with South Dearborn, pursuant to which the Company's shareholders will receive $29.00 in cash per share

of Magnachip owned (the "Merger Consideration").

3.     In order to convince the Company's public common shareholders to vote in favor of the Proposed Transaction, on May 7, 2021, Defendants authorized the filing of a definitive Schedule 14A Registration Statement with the SEC (the "Registration Statement"). As described below, the Registration Statement is materially incomplete and misleading in violation of Sections 14(a) and 20(a) of the Exchange Act and Delaware state law. In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) the process that culminated in the Proposed Transaction, (ii) the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), and (iii) the Company's financial projections in connection with the Proposed Transaction.

4.     The special meeting of the Company's shareholders to vote on the Proposed Transaction is scheduled for June 15, 2021 (the "Shareholder Vote").  Therefore, it is imperative that the material information omitted from the Registration Statement be disclosed prior to the Shareholder Vote, so the Company's shareholders can properly exercise their corporate voting rights.

5.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 and Delaware state law.  Plaintiff seeks either to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's common stock trades on the NYSE, which is headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## **PARTIES**

9.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Magnachip common stock.

10.     Defendant Magnachip is incorporated under the laws of Delaware and has its principal executive offices located at 74, Rue De Merl, Luxembourg, Luxembourg, L-2146. The Company's common stock trades on the NYSE under the symbol "MX."

11.     Defendant Young-Joon Kim ("YJ Kim") is, and has been at all relevant times, the Chief Executive Officer ("CEO") and Chairman of the Board of Directors of Magnachip.

12.     Defendant Kyo-Hwa Chung is, and has been at all relevant times, a director of

Magnachip.

13.    Defendant Melvin Keating is, and has been at all relevant times, a director of Magnachip.

14.    Defendant Ilbok Lee is, and has been at all relevant times, a director of Magnachip.

15.    Defendant Camilo Martino is, and has been at all relevant times, a director of Magnachip.

16.    Defendant Gary Tanner is, and has been at all relevant times, a director of Magnachip.

17.    Defendant Nader Tavakoli is, and has been at all relevant times, a director of Magnachip.

18.    Defendants identified in paragraphs 11 through 17 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with the Company, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.      Background of Magnachip and the Proposed Transaction**

19.    Magnachip is a designer and manufacturer of analog and mixed-signal semiconductor platform solutions for communications, IoT, consumer, industrial and automotive applications. The Company provides a broad range of standard products to customers worldwide. With more than 40 years of operating history, Magnachip owns a portfolio of approximately 1,200 registered patents and pending applications and has extensive engineering, design, and manufacturing process expertise.

20.    On March 26, 2021, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

SEOUL, South Korea, March 26, 2021 /PRNewswire/ --

Magnachip Semiconductor Corporation ("Magnachip" or the "Company") (NYSE: MX), the South Korean leader in display and power solutions, today announced that it has entered into a definitive agreement (the "Agreement") with South Dearborn Limited, a company incorporated in the Cayman Islands, and Michigan Merger Sub, Inc., a Delaware corporation, which are investment

vehicles established by Wise Road Capital LTD and certain of its limited partners ("Wise Road").

Under the terms of the Agreement, Magnachip shareholders will receive $29.00 in cash for each share of Magnachip's common stock they currently hold, representing a premium of approximately 75% to Magnachip's 3-month volume-weighted average share price and approximately a 54% premium to the unaffected closing stock price on March 2, 2021, the last trading day before media reports of third-party interest in acquiring Magnachip. The all-cash transaction has an equity value of approximately $1.4 billion. The transaction is fully backed by equity commitments and not contingent on any financing conditions.

Following the closing of the transaction, Magnachip's management team and employees are expected to continue in their roles, and the Company will remain based in Cheongju, Seoul and Gumi, South Korea. The transaction is expected to be seamless for customers and employees across Magnachip's businesses.

Magnachip's Chief Executive Officer, YJ Kim, said: "This transaction is in the best interests of all of our stakeholders, including shareholders, customers and employees. It will provide an excellent opportunity to accelerate our MX 3.0 growth strategy. Given their deep industry expertise, Wise Road Capital is an ideal partner for Magnachip, and we look forward to working with them as we chart the next phase for our company. We remain grateful to our customers for their trust and to our fellow employees for their unwavering commitment to delivering industry-leading products to customers worldwide."

Wise Road intends to work together with Magnachip's management team to pursue the next step in the Company's growth strategy and transform the Company into a true industry leader in the global display and power markets. Through its additional investment and global network, Wise Road will help Magnachip's growth internationally. Wise Road remains absolutely committed to providing world-class products and services to the Company's customers, while creating a stable environment for the company's employees to grow and thrive.

The Board of Directors of Magnachip has unanimously approved the Agreement and recommends that Magnachip shareholders vote in favor of the transaction. Details of the transaction and the Agreement are included with the Company's current report on Form 8-K, which will be filed with the United States Securities and Exchange Commission in due course.

The transaction is expected to close during the second half of 2021, subject to customary closing conditions, including the receipt of shareholder and regulatory approvals.

II.     **The Registration Statement Omits Material Information**

21.     In connection with the Proposed Transaction, Defendants filed a materially incomplete and misleading Registration Statement with the SEC. The Individual Defendants were obligated to carefully review the Registration Statement to ensure it did not contain any material misrepresentations or omissions before it was filed and disseminated to the Company's shareholders. However, the Registration Statement misrepresents or omits material information necessary for the Company's shareholders to make an informed decision regarding the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act, SEC Rule 14a-9, and the Board's fiduciary duty of candor under Delaware law.

A.     Process Related Disclosure Deficiencies

22.     First, the Registration Statement fails to disclose sufficient information regarding the Company's evaluation of and discussions with potential counterparties, most notably Party D. More specifically, Party D appears to have expressed a strong interest in a transaction with the Company, and at one point had a superior offer to other potential parties at that time, yet it appears that the Company determined not to pursue further discussions with Party D as aggressively as it did with other potential counter-parties and, even worse, ignored Party D's expressed interest altogether. By way of example:

(a)     On September 14, 2020, Party D delivered an unsolicited indication of interest valued at $16-18 per share, with a potential additional upward adjustment of 10% and a further upward adjustment based on the Company's cash balance on the closing date of a transaction. Comparatively, on June 26, 2020, Party A had delivered an indication of interest valued at $16.50 per share, which the Board determined was not at a level sufficient to warrant further engagement by the Company. Nonetheless, on September 18, 2020, the Company informed Party D

that it was not for sale.

(b)   Then, one week later, the Board determined that Party A and Party D had the most promising indications of interest and to continue discussions with both. But then, on September 25, 2020 and September 30, 2020, Company representatives reiterated to Company D that the Company was not for sale. There is no indication in the Registration Statement whether the Company was telling Party A the same thing. To the contrary, on October 6, 2020, the Director of M&A of Party A traveled to Seoul, Korea to meet with the Company's management, although there is no further information regarding the nature and substance of these discussions.

(c)   On October 11, 2020, Party D delivered a second indication of interest, which reiterated its $16-18 per share value with a potential upward adjustment of 10%, and indicated that the offer would remain open until December 12, 2020. On October 14, 2020, Party A also delivered its second indication of interest with a value of $21.50 per share, and a request for exclusivity. Following discussion, the Board directed the Company's representatives to continue to engage with Party A. Notably, it appears that the Company chose not to enter into a formal exclusivity agreement, but it nevertheless appears that, over the next several weeks, the Company held discussions *only* with Party A.

(d)   On November 19, 2020, Party D sent an email to Mr. YJ Kim "requesting feedback" with respect to its indication of interest *more than one month earlier* – implying that the Company simply ignored it. The next day, Party A sent an email to the Company's representative reaffirming its interest and indicating that it was prepared to increase its offer price to $22 per share and requested that the

7

Board respond by the close of business on November 24, 2020 (the "Nov. 20 Offer"). On November 23, 2020, the Board directed its advisors to communicate a counter-offer of $22.50 per share to Party A – "which was the price at which [the] Board was willing to engage further with Party A."

(e)     On November 25, 2020, after this counter-offer was communicated to Party A, Party A withdrew its Nov. 20 Offer. Conciliatorily, the next day, the Board directed Mr. YJ Kim to re-engage with Party A and to proceed to negotiate a transaction with Party A at a *lower* purchase price of $22.00 per share. The following day, Mr. YJ Kim communicated to Party A that the "*Board was committed to exploring a potential transaction with Party A*" (emphasis added).

(f)     Then, on November 29, 2020, Party D informed the Company that it was willing to raise its offer price and consider other terms that were important to the Board. The next day, Party D increased its offer to $23.50 per share – $1 per share more than the Company's counter-offer to Party A – and noted that this revised offer would remain open until December 12, 2020. Notably, this amounted to a substantial *$5.50 per share increase* from Party D's prior max range of $18 per share and indicates the seriousness of Party D's interest in a transaction with the Company.

(g)     On December 1, 2020, Party A emailed the Board indicating that its $22 per share offer was its "best and final" position. Later that day, the Board met, discussed Party A and Party D's respective offers, and determined to communicate to Party A that, "if Party A was willing to move toward more market terms that provide[d] greater certainty of closing, then the Company would be able to discuss with Party A further *on an exclusive basis*" (emphasis

8

added).

(h)     Thereafter, it appears that the Company continued to engage with Party A at a proposed offer of $22.00 per share *and failed to engage with Party D at all*, despite not being bound by any exclusivity agreement, such that Party D's then-superior offer expired on December 12, 2020 without any apparent Company action. Indeed, when the Board met on December 13 and 15, 2020, it does not appear that Party D's offer was even discussed.[1] Rather, on December 15, 2020, the Board determined to enter into exclusivity with Party A, and a 14-day exclusivity period began on December 16, 2020.

(i)     The exclusivity period with Party A expired on January 6, 2021 without a deal. Nonetheless, it was not until January 18, 2021 that the Company re-engaged with Party D. On January 21, 2021, Party D re-stated its $23.50 per share offer.

(j)     The following day, Company representatives met with Party A to discuss ways the parties could complete a transaction. Thereafter, and over the next several days, the Company and Party A continued to discuss and negotiate the terms of an agreement. During this period, and for undisclosed reasons, the Board appears to have continued to disfavor and/or ignore a transaction with Party D, and it appears that the Company made no apparent effort to engage with Party D and/or improve Party D's offer. Indeed, the Registration Statement makes just *one* additional reference to Party D, regarding a conversation on February 2, 2020.

23.     The recitation of facts in the Registration Statement gives the clear impression of

---

[1]     Similarly, on December 10, 2020, "a financial sponsor inquired about a potential transaction with the Company," yet it does not appear that this inquiry was discussed at the December 13 or 15 Board meetings before the Company agreed to exclusivity with Party A. On December 17, 2020, this financial sponsor delivered a preliminary indication of interest addressed to Mr. YJ Kim, regarding the potential acquisition of the Company's Power Solutions business; the Registration Statement does not disclose any additional information regarding this offer.

favoritism toward Party A and/or bias toward Party D, and the Registration Statement must disclose additional information regarding the Company's interactions with Party D and/or reasons for the Company's unwillingness to pursue a transaction with Party D as aggressively as it did with Party A.

24.     <u>Second</u>, and relatedly, the Registration Statement must also disclose additional information regarding the outreach by the Company's financial advisor, J.P. Morgan, to "two other strategic parties" following the Board's January 15, 2021 directive, including but not limited to (i) the genesis of the "two other strategic parties" (*i.e.* how and/or by whom were they identified); (ii) whether and when they were contacted; (iii) the substance of all of the discussions; and (iv) the outcome of the outreach, including the Board's deliberations. This information is material to shareholders' evaluation of the sales process, particularly in light of the fact that, shortly thereafter, on February 2, 2021, BMO Capital Markets Corp. (including its representatives, "BMO"), the financial advisor of Wise Road, contacted the Company to express Wise Road's interest in exploring a potential transaction with the Company, and there is no indication that Wise Road's interest was unsolicited.

25.     <u>Third</u>, the Registration Statement must disclose additional information regarding the "Ad Hoc Transaction Committee" formed on January 11, 2021. Specifically, the Registration Statement must disclose (i) why it determined to form the committee almost *two years* after initiating its evaluation of strategic transactions and alternatives in February 2019, and nearly *seven months* after engaging in substantive discussions regarding the receipt of multiple indications of interest; (ii) the specific authority and powers granted to the committee; and (iii) the reasons that Messrs. Martino and Tanner were selected as members of the committee. Whether the Board and/or the Company's Nominating and Governance Committee identified potential conflicts-of-interest warranting the creation of the Ad Hoc Transaction Committee is material to shareholders' evaluation of the Proposed Transaction. This is all the more true in light of the transaction bonus pool of approximately

$2,460,000 to be awarded to certain executive officers of the Company and the lucrative equity interests of Mr. Y.J. Kim (and other executive officers), who was intimately involved in the negotiations of the Proposed Transaction, and because it is unclear from the Registration Statement whether any of the Company's executives and or members of the Board will continue their employment and/or directorships with the post-close combined company.[2]

B.   Financial Advisor Related Disclosure Deficiencies

26.   The Registration Statement also omits material information regarding the Company's engagement of J.P. Morgan and its financial analyses.

27.   Specifically, and fourth, the Company must disclose the individual multiples J.P. Morgan observed in its *Selected Transactions Multiples Analysis*. This information is material for shareholders to determine whether J.P. Morgan's reference range selection and application is reasonable.

28.   Fifth, while the Registration Statement indicates that, "[d]uring the two years preceding the date of J.P. Morgan's opinion, neither J.P. Morgan nor any [of] its affiliates have had any material financial advisory or material commercial or investment banking relationships with Parent," the Registration Statement fails to disclose whether J.P. Morgan has any previous material relationships with *Wise Road*,[3] and if so the nature of the relationship and/or services and the compensation received by J.P. Morgan.

C.   Disclosure Deficiencies Related to the Company's Financial Projections

29.   Sixth, the Registration Statement must disclose the Net Income Projections for the Company. The failure to disclose the Company's net income projections obfuscates the financial

---

[2]   To the extent applicable, the Registration Statement must also disclose the timing and nature of all communications regarding the future employment and directorship of the Company's officers and directors, including who participated in all such communications.

[3]   Indeed, Parent is merely an investment vehicle established by an affiliate of Wise Road in March 2021 solely for the purposes of completing the Proposed Transaction, and Parent has not engaged in any business activities other than those in connection with the Proposed Transaction.

picture of the Company and provides a misleadingly incomplete representation of the Forecasts summarized in the Registration Statement. *See* 17 C.F.R. § 229.10(b)(1); see also 17 C.F.R. § 244.100 (regarding disclosure of non-GAAP financial measures).

30.     If a proxy discloses financial projections and valuation information, such projections must be complete and accurate. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known – but it may not choose half-truths. Moreover, when a company discloses non-GAAP financial measures in a solicitation statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

* * *

31.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

32.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

34.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35.     The omission of information from a registration statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

36.     Defendants have issued the Registration Statement with the intention of soliciting the Company's public common stockholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, *inter alia*, the process that culminated in the Proposed Transaction, the Company's financial projections, and potential conflicts of interest faced

by the Company's financial advisor and certain members of the Board.

37.      In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

38.      The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction. Indeed, the Individual Defendants were privy to and had knowledge of the Company's financial projections and the details surrounding the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading.

39.      The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the

Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of the Company's financial projections.

40.     Magnachip is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

41.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Magnachip within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Magnachip, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements

or cause the statements to be corrected.

45.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

46.    In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT III

**(Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)**

50.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they sought shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

52.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving and/or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public stockholders.

53.     The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights she or he possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

54.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until

the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 3, 2021

**OF COUNSEL**

**KAHN SWICK & FOTI, LLC**
Michael Palestina
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: 504.455.1400
Tel.: (504) 648.1843
Fax: (504) 455-1498
Email: michael.palestina@ksfcounsel.com

*Attorneys for Plaintiff*

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*